<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT AND KIM SUMMERS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PHH MORTGAGE CORPORATION, <br><br> Defendant. | Civil Action No. 22-06726 (GC) (TJB) <br><br> **MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

This matter comes before the Court upon Defendant PHH Mortgage Corporation's Motion to Dismiss (ECF No. 6) Plaintiffs Robert and Kim Summers's Complaint (ECF No. 1-1), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiffs opposed (ECF No. 11), and Defendant replied (ECF No. 12). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **GRANTED**.

I.  **BACKGROUND**[1]

    A.  **Plaintiffs' Allegations**

Plaintiffs are residents of Freehold, New Jersey.  (ECF No. 1-1 ¶ 12.)  Defendant is a mortgage corporation organized and existing under the laws of New Jersey.  (*Id.* ¶ 13.)[2]  In April 2009, Mr. Summers executed a mortgage (the "Mortgage") and note (the "Note") from Defendant for the purchase of a home in Freehold.  (*Id.* ¶ 16.)  The loan was insured by the Federal Housing Administration (FHA), a part of United States Department of Housing and Urban Development (HUD).  (*Id.* ¶ 17.)  This meant, Plaintiffs allege, that "if a borrower is unable to make payments under a loan's terms, the FHA insures the lender against financial loss resulting from that default." (*Id.* ¶ 2.)  "In exchange for those benefits," Plaintiffs continue, "FHA lenders must agree to certain HUD regulations governing their relationships with borrowers."  (*Id.* ¶ 3.)

This action arises from Defendant's charging Plaintiffs property-inspection fees that allegedly violated paragraph 8 of the Mortgage: "Lender may collect fees and charges authorized by the [HUD] Secretary."  (ECF No. 6-2 ¶ 8;[3] ECF No. 1-1 ¶ 4.)  In Plaintiffs' reading, paragraph

---

[1]     When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court typically accepts as true all well-pleaded facts in the complaint.  *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

[2]     Defendant asserts that this Court has subject-matter jurisdiction over this action, because although Plaintiffs assert only state-law claims, "Plaintiffs' claims necessarily raise substantial and disputed issues of federal law," including "regulations and guidelines promulgated by" HUD, namely 24 C.F.R. § 203.377.  (ECF No. 1 ¶ 7.)  The Court agrees.  *See Hendiazad v. Ocwen Loan Servicing, LLC*, Civ. No. 19-1270, 2021 WL 2125028, at *2 (E.D. Va. May 24, 2021), *aff'd*, Civ. No. 21-1699, 2023 WL 3116768 (4th Cir. Apr. 27, 2023) ("The meaning of the [HUD regulations] is an important issue of federal law that sensibly belongs in a federal court." (quoting *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 309 (2005))) (alterations in *Hendiazad*).

[3]     The Complaint includes citations to the Mortgage and Note as exhibits to the Complaint, though those documents were not attached to the initial filing.  (*See* ECF No. 1-1 ¶ 4; *see also* ECF No. 6-15 at 3 (noting the missing attachments).)  Defendant attached copies of these documents to

8 limits Defendant to assessing "*only* those fees 'authorized by the Secretary.'" (ECF No. 1-1 ¶ 33 (emphasis added).)  Plaintiffs contend that before charging property-inspection fees, Defendant needed to comply with certain HUD regulations and guidelines governing such fees — specifically, 24 C.F.R. § 203.377, which obligates a mortgagee to inspect a federally insured property when efforts to reach the mortgagor are unsuccessful, and provisions of the HUD Handbook that proscribe charging a mortgagor for costs of an inspection "[i]f there is evidence that the mortgagee knew the mortgagor was still in occupancy."[4]  (ECF No. 1-1 ¶¶ 6-10.)

Instead of complying with these regulations, Plaintiffs allege, Defendant "has a policy of indiscriminately charging borrowers property inspection fees regardless of whether the home is actually vacant or abandoned," and "[p]rior to charging these fees, [Defendant] takes no steps to confirm whether a borrower's property is in fact vacant or abandoned." (*Id.* ¶ 8.)  Plaintiffs allege that Defendant charged Plaintiffs these fees even though Defendant knew based on the parties' dealings — including years of mailings from Defendant to Plaintiffs, as well as the parties' "active litigation regarding a loan modification" — that Plaintiffs were occupying the property.  (*Id.* ¶¶

---

its motion. (*See* ECF No. 6-2.)  Because these documents are both integral to and explicitly relied upon in the Complaint, the Court may consider them without converting Defendant's motion to dismiss into one for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'") (emphasis in original) (citations omitted); *AV Design Servs., LLC. v. Durant*, Civ. No. 19-8688, 2021 WL 1186842, at *4 (D.N.J. Mar. 30, 2021) ("The quintessential example of this exception is a breach of contract action; in such cases, the contract would be considered integral and a defendant filing a motion to dismiss under 12(b)(6) would be permitted to attach the contract as an exhibit, which would then be considered for its truth by the court." (citing *In re Merck Co., Inc., Sec., Derivative & "Erisa" Litig.*, Civ. No. 05-1151, 2006 WL 8460903, at *2 (D.N.J. Jan. 20, 2006))).

[4]    *See* U.S. Dep't of Housing and Urban Dev., Administration of Insured Home Mortgages Handbook 4330.1 REV-5, ch. 9-9, subsec. A.1.a, A.2.c, A.2.d (1994), https://www.hud.gov/program_offices/administration/hudclips/handbooks/hsgh/4330.1.

18-21.) And yet, from March 2016 through December 2018, Defendant "assessed *at least* nineteen (19) separate property inspection fees to Plaintiffs." (*Id.* ¶ 20 (emphasis in original).)

On their theory that Defendant charged fees not "authorized by the [HUD] Secretary," Plaintiffs assert claims of breach of contract (Count I); violation of the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-1, *et seq.* (Count III); and violation of the Truth-in-Consumer Contract, Warranty and Notice Act, N.J. Stat. Ann. § 56:12-14, *et seq.* (Count IV). (*See generally* ECF No. 1-1.)[5] Plaintiffs also seek certification of a class of New Jersey residents who "obtained an FHA-guaranteed loan from [Defendant] and were charged property inspection fees while occupying the property" or were charged such fees "more frequently than once every 30 days." (*Id.* ¶ 23.)

**B.   The Bankruptcy Proceedings**

Plaintiffs filed two Chapter 13 bankruptcy petitions since obtaining the loan, the first in September 2016 and the next in May 2019.[6] (*See In re Summers*, Bk. No. 16-28460 (CMG) (D.N.J. Bankr.); *In re Summers*, Bk. No. 19-20123 (CMG) (D.N.J. Bankr.).)[7] During the first petition, Plaintiffs resolved Defendant's objection to confirmation of their Chapter 13 plan by entering into an order allowing Defendant's full claim for prepetition arrears of $24,363.91 to be paid through

---

[5]   The Complaint also includes a separate claim for injunctive relief (Count II), although Plaintiffs concede that claim is truly a remedy and thus may be dismissed. (ECF No. 11 at 12.)

[6]   Plaintiffs' counsel here also represented Plaintiffs in their bankruptcy petitions. (*See* ECF Nos. 6-5, 6-7 at 13.)

[7]   The Court takes judicial notice of Plaintiffs' bankruptcy petitions and the related filings and docket entries, as they "are public records capable of accurate and ready determination." *Giordano v. Saxon Mortg. Servs., Inc.*, Civ. No. 12-7937, 2013 WL 12158378, at *3 (D.N.J. Oct. 31, 2013) (citing *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007)).

4

the plan.[8]  (ECF No. 6-3.)  In May 2019, the bankruptcy court dismissed the first petition.  (ECF No. 6-6.)

That month, May 2019, Plaintiffs filed the second Chapter 13 bankruptcy petition.  (ECF Nos. 6-7.)  In November 2019, Plaintiffs filed a motion objecting to Defendant's proof of claim, alleging that Defendant, when calculating the arears noted in its proof of claim in a prior case, failed to credit payments that Plaintiffs made as reflected in "funds received column C."  (*In re Summers*, Bk. No. 19-20123, ECF No. 34-1, Claim No. 27-1.)  Defendant opposed and the bankruptcy court denied Plaintiffs' motion.  (*Id.*, ECF Nos. 36, 37.)  Shortly after, Plaintiffs filed another motion objecting to Defendant's proof of claim, this time including more details of their objection.  (*Id.*, ECF No. 40.)  Defendant opposed the motion, Plaintiffs responded, and ultimately the bankruptcy court denied the motion.  (*Id.*, ECF Nos. 50, 60, 61.)  Neither of Plaintiffs' objections concerned the inspection fees itemized in Defendant's proof of claim.  (*Id.*, ECF Nos. 34-1, 40, Claim No. 27-1 at 6, 10.)

In June 2021, Plaintiffs entered into the bankruptcy court's Loss Mitigation Program.  (*Id.*, ECF No. 115.)  The next month, July 2021, Plaintiffs filed a post-confirmation modified Chapter 13 plan, in which Plaintiffs proposed a loan modification to address the mortgage claim.  (*Id.*, ECF No. 119.)  After Defendant objected to confirmation of the modified plan, the parties entered into an order, which provided, among other things, that Defendant would not demand the arrears pending Plaintiffs' application for a loan modification.  (*Id.*, ECF No. 134.)

In September 2021, Plaintiffs converted their Chapter 13 petition to one under Chapter 7.  (*Id.*, ECF Nos. 138, 139.)

---

[8]  Defendant's proof of claim for this prepetition arrearage describes the payment default beginning on October 1, 2015, and reflects the property-inspection fees of $11.00 per assessment.  (ECF No. 6-4 at 4-5.)

In December 2021, now in Chapter 7 proceedings, Plaintiffs filed a motion to approve a loan modification with Defendant — which the bankruptcy court granted. (*Id.*, ECF Nos. 154, 155, 156.) In support of the motion, Plaintiffs' counsel attached a certification that listed the terms of the modification, including the "Unpaid Balance." (*Id.*, ECF No. 154-1 ¶ 3.) The 2021 modification agreement detailed how much as of November 1, 2021, was "payable under the Note and the Security Instrument," which is defined earlier in the agreement as the "Mortgage," and Plaintiffs' agreed-to "payment schedule for the modified Loan." (*Id.*, ECF No. 155 ¶ 3.) This "New Principal Balance," according to the 2021 modification agreement, "includes the prior outstanding unpaid principal balance (including, but not limited to, any previously capitalized amounts under any prior loan modifications) and is increased by this modification only to include past due payments which include principal, interest and any applicable escrow amounts missed during the recent disaster forbearance plan." (*Id.*)

In March 2022, the bankruptcy court discharged Plaintiffs of personal liability under Chapter 7. (*Id.*, ECF No. 159.) In June 2022, Plaintiffs filed a second motion to approve a loan modification with Defendant — which the bankruptcy court granted. (*Id.*, ECF Nos. 169, 170.) As he did for the first motion, Plaintiffs' counsel filed another certification listing the terms of the modification, including the "Unpaid Balance." (*Id.*, ECF No. 169-1 ¶ 3.) Except for the payment amounts and schedule, the 2022 modification agreement included substantially the same terms as the 2021 modification agreement described above. (*Id.*, ECF Nos. 155, 169-2.)

### C. Procedural History

On October 7, 2022, Plaintiffs initiated this action in the Superior Court of New Jersey, and on October 25, 2022, Plaintiffs served the Complaint on Defendant. (ECF No. 1 ¶¶ 1-2.)

6

Defendant then removed the case to this Court. (ECF No. 1.) Defendant's motion to dismiss followed. (ECF No. 6.)

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III. DISCUSSION

Defendant asserts six reasons for dismissing Plaintiffs' Complaint. (ECF No. 6-15 at 5-6.[9]) *First*, Plaintiffs' court-approved loan modification collaterally estops them from challenging

---

[9] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

7

the amount due under the loan contract. (*Id.* at 10-11.) *Second*, Plaintiffs have not alleged facts showing the inspection fees breach their contract. (*Id.* at 11-14.) *Third*, Plaintiffs cannot bring CFA or Truth Act claims for violation of HUD requirements because no private right of action exists. (*Id.* at 14-15.) *Fourth*, Plaintiffs cannot bring CFA or Truth Act claims based on alleged breaches of contract. (*Id.* at 15-16.) *Fifth*, and finally, Plaintiffs cannot bring a Truth Act claim based on the alleged invalidity of the contract. (*Id.* at 16.) The Court addresses each of Defendant's arguments in turn.

### A.  Collateral Estoppel

Defendant first argues that the doctrine of collateral estoppel bars Plaintiffs from challenging the amount agreed to under the court-approved 2022 modification agreement, which covered unpaid property-inspection fees assessed from 2016 to 2018. (ECF No. 6-15 at 10-11.)

Collateral estoppel, or issue preclusion, applies where four prerequisites are satisfied: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Giordano v. Saxon Mortg. Servs., Inc.*, Civ. No. 12-7937, 2013 WL 12158378, at *8 (D.N.J. Oct. 31, 2013) (quoting *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995)) (alterations in original); *see Moor v. Alliance HC 11 LLC*, Civ. No. 22-4472, 2023 WL 2744022, at *3 (D.N.J. Mar. 31, 2023); *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007). An issue was "actually litigated" in the prior action, even if a party failed to raise it, if the party had the opportunity to litigate it. *See Adelman v. BSI Fin. Servs., Inc.*, 179 A.3d 431, 437 (N.J. Super. Ct. App. Div. 2018) ("[A]lthough the issue was arguably not fully litigated in the foreclosure action, had plaintiff timely raised the issue in that action, full litigation would have been provided.").

8

Plaintiff does not make any argument in opposition. "A plaintiff concedes a claim when she fails to oppose arguments in support of a motion to dismiss it under Fed. R. Civ. P. 12(b)(6)." *Powell v. Verizon*, Civ. No. 19-8418, 2019 WL 4597575, at *9 (D.N.J. Sept. 20, 2019) (citing *O'Neal v. Middletown Twp.*, Civ. No. 18-5269, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019)); *see Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005) (noting that party's failure to oppose argument raised in a motion to dismiss constitutes waiver); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."); *Pers. v. Teamsters Loc. Union 863*, Civ. No. 12-2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). For that reason alone, the Court may dismiss the Complaint.

Defendant likens this case to *Giordano v. Saxon Mortg. Servs., Inc.*, where the Court ruled that plaintiffs were collaterally estopped from relitigating the terms of a court-approved loan modification agreement, which capitalized into the loan "unpaid interest, unpaid installments, valuation fees, and delinquent tax fees." 2013 WL 12158378, at *3, 9-10. There, the bankruptcy court had confirmed a Chapter 13 plan and ordered plaintiffs to obtain a loan modification from the mortgagee. *Id.* at *3. Plaintiffs then filed a motion to approve their loan modification, stating that the "loan modification reflects that any and all pre and post petition arrears shall be added to the mortgage balance," and specifically asking the court to "modify [debtors] proof of claim to reflect pre-petition arrears of zero." *Id.* at *4. After the bankruptcy court approved the modification, Plaintiffs filed a modified bankruptcy plan that incorporated the loan modification, which the bankruptcy court confirmed. *Id.* As part of its ruling, the District Court found that the bankruptcy court's confirmation of plaintiffs' first modified plan constituted a "final and valid

9

judgment" under the collateral-estoppel doctrine.  *See id.* at *10 ("[O]nce a Chapter 13 plan is confirmed, it is final and given *res judicata* effect, absent fraud." (citing *In re Szostek*, 886 F.2d 1405, 1413 (3d Cir. 1989))).

The facts in *Giordano* resemble the facts in this case.  In each case, the parties capitalized the unpaid principal balance into the new amount due under the modification; petitioners successfully moved the court to approve a loan modification agreement; petitioners did not object to the modification during the bankruptcy proceedings, despite allegedly believing that the fees were improper; and petitioners had ample opportunity to object to the terms of the modification agreement before signing it and moving the court to approve the agreement.

But the cases have their differences.  For starters, in *Giordano*, the modification's terms called for capitalization of the fees that plaintiffs were challenging, 2013 WL 12158378, at *9; here, the modification agreements' terms add to the "New Principal Balance" past due payments of "principal, interest and any applicable escrow amounts missed," without explicitly mentioning fees of any kind, let alone the property-inspection fees that Plaintiffs now challenge (ECF Nos. 6-13 ¶ 3, 6-14 ¶ 3).  Also, in *Giordano*, the modification was entered in accordance with the bankruptcy court's order and incorporated into plaintiffs' proposed modified Chapter 13 plan, which the court later confirmed, 2013 WL 12158378, at *3-4; here, although Plaintiffs proposed a modified Chapter 13 plan that contemplated a loan modification (*In re Summers*, Bk. No. 19-20123, ECF Nos. 119 at 2), the bankruptcy court never confirmed that plan, and Plaintiffs' Chapter 13 petition subsequently converted to Chapter 7, which does not offer a loss mitigation program under which petitioners may avail themselves of modification agreements.

Minding these differences, the Court questions whether the bankruptcy court's approval of the loan modification agreements carries the same legal weight as the confirmation of the Chapter

13 plan in *Giordano*. But without the benefit of any opposition arguments — Plaintiffs' opposition papers do not even mention collateral estoppel or deny that the doctrine applies, much less refute Defendant's arguments — the Court cannot say that the above-noted differences are meaningful enough to justify an outcome different from that of *Giordano*. Indeed, "[i]t is not the responsibility of the Court to perform the parties' research for them." *Livingstone v. Haddon Point Manager LLC*, Civ. No. 19-13412, 2020 WL 7137852, at *9 (D.N.J. Dec. 7, 2020) (citing *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017)). And Plaintiffs' "failure to respond to the pertinent . . . argument acts as a concession of that argument." *Sang Geoul Lee*, 720 F. App'x at 666 (citing *Griswold v. Coventry First LLC*, 762 F.3d 264, 274 n.8 (3d Cir. 2014); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)).

Applying the elements of collateral estoppel, the Court finds that *first*, the issues of Defendant's claim, the loan modification agreement, and the amount due under the agreement, all of which Defendant contends included property-inspection fees, were adjudicated in bankruptcy court. *Second*, the modification terms were actually litigated, as Plaintiffs twice asked the bankruptcy court to approve — and the bankruptcy court so approved — modifications of Plaintiffs' loan with Defendant. (ECF Nos. 6-9 (2021 request), 6-10 (2022 request), 6-11 (2021 order), 6-12 (2022 order), 6-14 (2022 modification agreement).) Even if the property-inspection fees were not fully litigated in the bankruptcy court, full litigation would have been provided had Plaintiffs timely raised the issue. *Third*, Plaintiffs have not contested that the court-approved loan modification agreements constitute final and valid judgments. *Fourth*, and finally, Plaintiffs have also not contested that the terms of the loan modifications were essential to the bankruptcy court's approval of the modifications. Plaintiffs' claims are thus barred by collateral estoppel.

Because the Court dismisses the Complaint under the collateral-estoppel doctrine, it need not consider the additional grounds that Defendant raises for dismissal.

## IV.  CONCLUSION

For the reasons set forth above, and other good cause shown, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 6). Plaintiffs' Complaint (ECF No. 1-1) is **DISMISSED** without prejudice. Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies set forth in this Memorandum Opinion — in particular, establishing why collateral estoppel does not bar Plaintiffs' claims. An appropriate Order follows.

Dated: August 22, 2023

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**