| | |
|---|---|
| ROBERT AND KIM SUMMERS, ) <br> individually and on behalf of all ) <br> others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> PHH MORTGAGE CORPORATION, ) <br> ) <br> ) <br> Defendant. ) | Case No. 22-CV-6726 TGB <br><br> **1st AMENDEDCOMPLAINT AND JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiffs Robert and Kim Summers, bring this complaint against Defendant PHH Mortgage Corporation ("PHH" or the "Defendant") on behalf of themselves and all persons similarly situated, and allege as follows:

I. **GENERAL FACTUAL ALLEGATIONS**

1. The Federal Housing Administration ("FHA"), a part of the United States Department of Housing and Urban Development ("HUD"), provide loans backed by the federal government, offering advantages to the lender. For example, FHA lending requirements are more flexible than traditional real

estate lending requirements, which allows lenders to approve loans with lower down payments or for borrowers with lower credit scores. This allows lenders to approve additional loans, leading to additional profits for the lender.

2. Lenders also enjoy the protection of the federal government: if a borrower is unable to make payments under a loan's terms, the FHA insures the lender against financial loss resulting from that default.

3. In exchange for those benefits, FHA lenders must agree to certain HUD regulations governing their relationships with borrowers. These regulations provide various protections to the borrowers.

4. Standard FHA-guaranteed loans reference these HUD regulations in both the Note and the Mortgage. See, e.g., Ex. A (Summers Mortgage), ¶¶ 8 ("Lender may collect fees and charges authorized by the Secretary [of Housing and Urban Development]), 9(d) ("Regulations of HUD Secretary: In many circumstances regulations issued by the Secretary will limit Lender's rights"); Ex. B (Summers Note), ¶ 6(B) ("If Borrower defaults by failing to pay in fully any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest) (emphasis added).

5. As noted in the Mortgage, these HUD regulations put limits on the fees lenders are permitted to charge borrowers, and such fees are permissible only if "authorized by the Secretary." This standard language is common to all FHA-backed mortgages.

6. One such fee governed by the HUD regulations is a property inspection fee. HUD regulations permit a lender to charge a borrower a property inspection fee only when the lender has been unsuccessful in contacting the homeowner by telephone and has obtained knowledge that the property is vacant: The mortgagee, upon learning that a property is subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. 24 C.F.R. § 203.377 (emphasis added).

7. This regulation prevents lenders from charging property inspection fees if the lender has no reason to believe a borrower's home is unoccupied. See HUD Handbook, 4330.1 REV-5 9-9(A)(c)(2)(d) ("If there is evidence that the mortgagee knew the mortgagor was still in occupancy, such

as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD office, such charges are inappropriate and must not be charged to the mortgagor or included on a claim for insurance benefits").

8. Contrary to HUD regulations, PHH has a policy of indiscriminately charging borrowers property inspection fees regardless of whether the home is actually vacant or abandoned. Prior to charging these fees, PHH takes no steps to confirm whether a borrower's property is in fact vacant or abandoned. PHH uses these unnecessary and illegal property inspection fees to enhance its profits.

9. The HUD Servicing Guidelines place the onus on the mortgagee to establish vacancy. HUD Servicing Guidelines, Chapter 9, § 4330.1, 9-9 Inspection, Preservation and Protection Requirements, A. Inspections (a) (1) ("When the mortgage is in default and a payment is not received within 45 days of the due date and efforts to reach the mortgagor or occupant at least by telephone have been unsuccessful, the mortgagee must perform a visual inspection of the mortgaged property to determine if it has become vacant or abandoned.") (emphasis added); see also 24 C.F.R. § 203.377. Only then may such inspections occur.

10. In addition, "[i]f there is evidence that the mortgagee knew the mortgagor was still in occupancy, such as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD Office, such charges are inappropriate and must not be charged to the mortgagor or included on a claim for insurance benefits." HUD Servicin Guidelines, Chapter 9, § 4330.1, 9-9 Inspection, Preservation and Protection Requirements, A. Inspections (d). As described further below, PHH was indeed aware that the subject Property was occupied, but nevertheless performed and sought reimbursement for its unnecessary and prohibited follow-on inspections.

11. These unconscionable and intentional practices are designed to maximize fees assessed on borrowers' accounts when they are already struggling with a potential default and cause the borrowers to suffer an ascertainable loss as defined in the applicable statute.

## II. PARTIES

12. Plaintiffs are residents of Freehold, New Jersey and citizens of the State of New Jersey.

13. Defendant PHH is a corporation organized and existing under the laws of New Jersey.

### III. JURISDICTION AND VENUE

14. The Court has jurisdiction over the parties and claims asserted herein as both parties are located here.

15. Venue is proper in this Court because the facts and activities underlying this lawsuit occurred primary and substantially in this County, and the subject property for which PHH provided the FHA-backed loan is located in this County.

### IV. FACTS SPECIFIC TO PLAINTIFFS

16. On April 3, 2009, Plaintiff Robert Summers ("Mr. Summers") executed a Mortgage and Note for the purchase of a home located at 244 Daffodil Drive, Freehold, NJ 07728 (the "Property"). See Ex. A; Ex. B. Plaintiffs have occupied the Property continuously since April 2009.

17. The loan Mr. Summers received from PHH was an FHA insured loan, and the Mortgage contained the above-quoted language noting that PHH could only charge fees authorized by the HUD regulations. Ex. A, ¶ 8.

18. Beginning in April 2009 and continuing for years thereafter, PHH communicated with Plaintiffs at the Property address on a regular basis,

including by sending certified and first-class mail address to Plaintiffs at the Property address, which Plaintiffs accepted at that address.

19. Furthermore, beginning in or around September 2016, Plaintiffs and PHH were involved in active litigation regarding a loan modification, throughout which the parties were in court and communicating regarding the Property and Plaintiffs' continuing occupancy thereof on a regular basis. These communications, and filings made during the course of that litigation, confirm PHH's knowledge that Plaintiffs were occupying the Property. Furthermore, during the course of that litigation, Plaintiffs swore under penalty of perjury that they were in fact occupying the Property.

20. In or around March 2016, notwithstanding years of communication with Plaintiffs at the Property address, PHH began assessing property inspection fees to Plaintiffs. From March 2016 through December 2018, PHH assessed at least nineteen (19) separate property inspection fees to Plaintiffs.

21. Plaintiffs occupied the Property throughout the entire period PHH was charging these fees. PHH had no reason to believe that the Property was vacant or that an inspection was necessary. In fact, during this time, PHH was in regular contact with Plaintiffs and was aware that Plaintiffs were living in the Property.

22. Additionally, plaintiff was assessed inspection fees more frequently than what was permitted by FHA, inflating the amount claimed as due.

23. On May 20,2019, plaintiff filed a Chapter 13 bankruptcy petition in the District of New Jersey bankruptcy court bearing docket # 20-19123-CMG.

24. On April 15, 2020, a Chapter 13 plan was confirmed.

25. On September 15, 2021, the bankruptcy case was converted from Chapter 13 to Chapter 7.

26. On November 8, 2021, amended schedules were filed with the bankruptcy court disclosing the claim set forth in this complaint.

27. On March 20, 2022, the plaintiff obtained a Chapter 7 discharge.

28. On June 9, 2023, the trustee issued a final report.

29. After the conclusion of the Chapter 7 matter, the plaintiff filed this complaint, based on the factual assertions of a right to inspection fees both prior and during the bankruptcy case.

30. Plaintiffs' voluntary conversion of their Chapter 13 bankruptcy to a Chapter 7 bankruptcy obviates the res judicata effect of the confirmed Chapter 13 plan. Hutchinson v. Delaware Sav. Bank FSB, 410 F. Supp. 2d. 374 (D.N.J. 2006). ("[W]e hold that Plaintiff's confirmed Chapter 13 plan was not a final judgment and had no binding effect upon conversion to a Chapter 7 case."); Michael v. DeHart (In re Michael), 436 B.R. 323 (Bankr. M.D. Pa. 2010),

aff'd, 446 B.R. 665 (M.D. Pa. 2011); aff'd, 2012 U.S. App. LEXIS 22244 (3d Cir. Oct. 26, 2012).

## PRAYER FOR RELIEF

1. WHEREFORE, for all these reasons, Plaintiffs, individually and on behalf of all others similarly situated, seeks relief as follows:

   i. Certification of the Class set forth above;

   ii. Appointment of Plaintiffs as class representatives and Plaintiffs' attorneys as Class Counsel;

   iii. Damages and/or the disgorgement of all sums improperly charged and/or collected by Defendant from Plaintiffs and the Class;

   iv. An injunction preventing Defendant from engaging in the conduct complained of herein;

   v. Interest;

   vi. Attorneys' fees, costs, and expenses; and

   vii. Such other and further relief as the Court deems just and proper.

Dated: September 14, 2023        Respectfully submitted,

**/s/ Edward Hanratty**
EDWARD HANRATTY, ESQ.
Attorney

57 W. Main Street, Suite 2D<br>
Freehold, NJ 07728<br>
thanratty@centralnewjerseybankruptcylawyer.com

## CERTIFICATION OF NO OTHER ACTION

I certify that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief, other than those contained in D.N.J. bankruptcy court case #19-20123 CMG . Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Dated: September 14, 2023               Respectfully submitted,

**/s/ Edward Hanratty**
EDWARD HANRATTY, ESQ.
Attorney
57 W. Main Street, Suite 2D
Freehold, NJ 07728
thanratty@centralnewjerseybankruptcylawyer.com

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

Dated: September 14, 2023		Respectfully submitted,

**/s/ Edward Hanratty**
EDWARD HANRATTY, ESQ.
Attorney
57 W. Main Street, Suite 2D
Freehold, NJ 07728
thanratty@centralnewjerseybankruptcylawyer.com